**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARMAINE AGNEW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 399** |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | **Magistrate Judge Gilbert** |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Charmaine E. Agnew ("Claimant") brings this action under 42 U.S.C. § 405(g),

seeking reversal or remand of the decision by Respondent Michael H. Astrue, Commissioner of

Social Security ("Commissioner"), in which the Commissioner denied Claimant's application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is

before the Court on the parties' cross-motions for summary judgment [Dkt.## 22, 27]. Claimant

argues that the Administrative Law Judge's ("ALJ") decision denying her application for DIB

and SSI should be reversed and/or that the case should be remanded for further proceedings.

Claimant raises the following issues in support of her motion: (1) whether the ALJ committed

legal error by failing to adequately consider Claimant's pain and the side effects of her pain

medication, and their impact on her daily activities, in assessing Claimant's residual functional

capacity ("RFC"); and (2) whether the ALJ committed legal error in failing to factor in

Claimant's anxiety and post-traumatic stress disorder ("PTSD") when formulating her RFC.[1]

---

[1] We have collapsed two of Claimant's arguments – that the ALJ improperly failed to consider the side effects of Claimant's pain medication and that he failed to evaluate properly Claimant's complaints of disabling pain and other symptoms in assessing her RFC -- because the arguments are related and overlap

For the reasons set forth below, Claimant's motion for summary judgment [Dkt.# 22] is granted in part, and the Commissioner's motion [Dkt.# 27] is denied. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## I. BACKGROUND

Claimant is a thirty-six year-old woman who suffered a gunshot wound to the abdomen in 1995. R. 108-11. As a result, Claimant suffers from recurring ascites and cysts in her abdomen that periodically require draining at a medical facility. *Id.* Secondary to her physical impairments, Claimant also suffers from mental impairments, specifically anxiety and PTSD. *Id.*

### A. Procedural History

Claimant filed for DIB and SSI on December 3, 2007, alleging a disability onset date of August 8, 2007. R. 117-19, 120-29. The Social Security Administration ("SSA") initially denied both of claimant's applications on March 25, 2008, finding that her condition did not prevent Claimant from performing her daily activities and was "not severe enough to be considered disabling." R. 58-62. Claimant filed a request for reconsideration which the SSA denied on June 23, 2008. R. 65-68, 70-73. Shortly thereafter, Claimant requested a hearing before an ALJ. R. 75-76.

An ALJ presided over Claimant's hearing on November 5, 2008. R. 9-18. Claimant appeared with her attorney and testified before the ALJ, at which time she amended her disability onset date to August 8, 2006. R. 34-53. Vocational Expert James J. Radke ("VE") also testified

---

in terms of the ALJ's credibility analysis. In her memorandum in support of her motion for summary judgment [Dkt.# 23], Claimant also asserted that the ALJ used the incorrect legal standard in assessing whether Claimant's mental impairments were severe by conflating the requirements of steps two and three of the required five-step sequential analysis. Claimant withdrew this argument in her reply memorandum [Dkt.# 29].

at the hearing.  *Id*.  No medical expert testified at the hearing.  *Id*.  The ALJ rendered a decision

that Claimant was not disabled under the Social Security Act.  R. 18.  Specifically, the ALJ

determined that Claimant has the  RFC to perform a full range of light work as it is normally

performed.  R. 17-18.  The ALJ also determined that Claimant's mental impairments, anxiety

and PTSD are non-severe.  R. 12-13.

On January 6, 2010, Claimant filed a request for review of the ALJ's decision.  R. 5.  The

Appeals Council denied Claimant's request on November 24, 2010, making the ALJ's decision

the final decision of the Commissioner.  R. 1-3.  Claimant subsequently filed this appeal pursuant

to 42 U.S.C. §405(g).

**B.  Hearing Testimony – November 5, 2008**

**1.  Charmaine E. Agnew, Claimant**

At the time of the hearing, Claimant was thirty-two years-old, single, and had been living

alone in Highland Park, Illinois for the previous year and a half.  R. 34.  Before living alone,

Claimant lived with her mother in Skokie, Illinois.  *Id*.  Claimant testified that she moved out

because she wanted independence.  *Id*.  Claimant and her counsel stated that Claimant had only

completed part of 11th grade, not 12th as her file indicated.  R. 37.  Claimant stopped attending

school because of the gunshot wound she suffered in February, 1995.  R. 37, 109.  Claimant

testified that she has not worked since her alleged disability onset date of August 8, 2006.  R. 35.

Claimant worked at Olympic Moving as a customer service representative for approximately a

year before her onset date.  *Id*.  Prior to working at Olympic, Claimant worked as a customer

service representative at several other companies.  R. 36.

Claimant testified that the fluid that accumulates in her abdomen periodically causes

disabling pain.  R. 41-42.  She testified that the pain is "more tolerable" when the fluid first starts

to accumulate, but after about a month, the pain is "hard to deal with." *Id.* She described the pain as similar to menstrual cramps and a dull, throbbing pain. R. 41-42. She also indicated that the intensity of the pain varies considerably. R. 41-42, 46. In addition to taking pain medication, the Claimant testified that she tries to change her habits to ameliorate the pain, but these changes only help slightly. R. 42. Claimant testified that when her pain becomes unmanageable, she goes to the emergency room. R. 45-46. If Claimant's doctors determine that enough fluid has built up, interventional radiology ("IR") will drain the fluid. R. 42. At the time of the hearing, Claimant indicated that her most recent draining was in August, 2008. R. 43. Claimant testified that when she has the fluid drained, she typically remains in the hospital for two days. R. 44.

Claimant testified that, between drainages, she manages her pain and other symptoms with medication. R. 44. Her physicians have prescribed Dilaudid and Vicodin for pain, Compazine for nausea, Mirtazapine for anxiety and as a sleep aid, and Zyprexa for depression. R. 44-45. Claimant testified that her doctors have told her that they "don't know what to do" about the recurring fluid accumulation and associated symptoms. R. 46. The doctors have told Claimant that surgery would pose too many potential risks, and that pain management is the current goal. R. 33, 46. Claimant testified that the symptoms have worsened since her onset date. R. 47-48.

Claimant testified that her pain and the side effects from her pain medication interfere with her daily activities. R. 38-41. Though she has a driver's license and is able to drive, she cannot drive while on medication. R. 38. Claimant stated that when she is in pain or taking medication, she does not do any household chores. R. 39. She primarily eats microwaveable foods because she is concerned about being drowsy over a stove, and her mother helps her with

cleaning. R. 39-40. Claimant reports that she is currently unable to engage in activities that she enjoyed before her injury, such as spending time with friends or exercising. R. 40-41.

### 2. James J. Radke, Vocational Expert

James J. Radke testified as a vocational expert. R. 48. He testified that Claimant's relevant work as a customer service representative is sedentary, semi-skilled work. R. 49. He classified her prior work as a cashier as light, unskilled work. *Id.* He also testified that ten days of absenteeism are tolerated annually in both sedentary and light work occupations. *Id.*

## C. Medical Evidence

### 1. Evanston Hospital

Claimant received the majority of her medical care at Evanston Hospital. R. 50-51. Medical records reflect that Claimant has received care at the hospital intermittently since 2003. R. 333-58, 375. Claimant would seek treatment at the hospital for pain and recurrent urinary tract infections resulting from the accumulation of fluid in her abdomen. R. 252. On one occasion, abdominal fluid became infected and encased her left ovary, which had to be removed as a result. *Id.*

In August and September, 2005, Claimant was admitted to the hospital because of increasing pain in her abdomen. R. 356, 383. On both occasions, the accumulated fluid was drained by the IR department. R. 383. In September, Dr. Kelly Chamberlain reported that Claimant did not want surgery, and that her physicians agreed with this assessment. R. 356. The doctors determined that continuing IR drainage of the cysts was the proper medical treatment to manage Claimant's recurring fluid accumulation. *Id.* Claimant reported to the hospital again in November, 2005 for outpatient services to treat a urinary tract infection. R. 350. Claimant was

again admitted for an IR draining in July, 2006, and she was also briefly admitted for a urinary tract infection in August, 2006.  R. 383.

Claimant reported to the hospital on January 16, 2007 to receive treatment for a kidney infection.  R. 340.  Claimant's attorney notes that medical records from a significant portion of 2007 are missing, but later records reflect that Claimant was admitted in June, 2007 for pain control.  R. 32, 383.  Claimant's medical history indicates that Claimant's cyst was not drained in June, and that the pain resolved on its own.  R. 383.

On September 3, 2007, Claimant was admitted to the hospital for abdominal pain, which she characterized as seven out of ten on the pain scale.  R. 262.  Claimant also suffered from nausea, fever, and a urinary tract infection.  R. 263-64.  Claimant was given intravenous pain medication while she was admitted, and the treating physician noted that Claimant was "very sedated with [her] new medications, but it is not clear if this is true sedation [or] a result of two weeks of very poor sleep prior to pain control."  R. 264.  After ruling out obstructive etiology, the doctors diagnosed Claimant with a neuropathic pain process.  R. 274.  When Claimant's pain became more tolerable, her physicians modified her pain medications to better control her pain. R. 276-77.  Upon discharge, Claimant refused her methadone dose because she felt that her pain was under control.  R. 272.  She also told doctors that she "felt that this pain control regimen was effective and reported a reduction of 3-4 points on the pain scale for each day after 9/5/07."  R. 277.

While she was admitted, Claimant met with a social worker at the hospital who suggested that Claimant should try to develop "effective coping mechanisms" for her trauma.  R. 265. Claimant indicated to the social worker that she would be interested in emotional support,

counseling, and medication assistance programs.  R. 265-66.  The social worker reported that upon discharge, Claimant did not want to discuss emotional coping further.  R. 274.

Claimant saw Dr. Hampton Richards on March 25, 2008 for abdominal pain, nausea, and chills.  Dr. Richards determined that Claimant's right ovarian cyst was "essentially unchanged since at least 2004," and did not require invasive surgical management.  R. 384.  The doctor indicated that even with surgery, continued fluid accumulation was likely.  *Id*.  Dr. Richards also noted that he "discussed with [Claimant] at length the benefit of establishing a good continuity and follow up with the medicine department" in order to "develop a plan of pain regimen" and schedule drainages of her cysts.  R. 385.  Claimant's fluid was not drained at this time, and Dr. Richards encouraged her to continue her "home pain regimen."  *Id*.  Claimant returned to Evanston Hospital in April, 2008, reporting abdominal pain and symptoms of a urinary tract infection.  R. 376.  Dr. George Mallios noted that Claimant was "taking a considerable amount of pain medication, which does not appear to be well managed."  R. 379.  Dr. Mallios prescribed Claimant additional Kadian for her pain and Macrobid for her urinary tract infection.  *Id*.

Claimant received another IR drainage of the cyst on July 22, 2008.  R. 444.  The treating physician found that the cyst had increased in size since Claimant's prior visit.  R. 445.  Claimant returned to the hospital in August, 2008, complaining of "mild symptoms" of nausea, pain, and dysuria.  R. 412.  Claimant told Dr. Steven Nwe that she knew she would need another drainage soon and wanted to be seen prior to that time.  *Id*.  Dr. Nwe prescribed her additional pain medications for her pain and an antibiotic for her urinary tract infection.  R. 412-13.  Dr. Nwe also recommended that Claimant see a urologist for her recurring urinary tract infections.  R. 469.  Claimant returned to the hospital in March, 2009, suffering from abdominal pain and nausea.  She was hydrated intravenously and given intravenous pain medication.  R. 465.

On August 5, 2009, Claimant reported to the hospital with abdominal pain and vomiting. R. 480. Hospital staff noted that Claimant was "extremely frustrated" at the time of admission. *Id*. Dr. Mehta Sahil reported that Claimant had been in pain since her March, 2009 visit, but the pain reached an "intolerable level" on August 5th. R. 481. Claimant was admitted and given additional pain medication. R. 481-87. The following day, Dr. Frances Wong examined Claimant and determined that there may be less accumulated fluid present than was present at Claimant's March examination. R. 490. Nevertheless, he scheduled her for an IR draining for the following day. *Id*. Claimant continued to receive intravenous pain medication. *Id*. After the physicians drained the accumulated fluid, Claimant reported feeling significantly better, even denying pain medication overnight. R. 498, 509. Claimant was discharged on August 7, 2009. R. 511.

### 2. Dr. Weiss, Internist

On February 23, 2008, Claimant saw internist Dr. Debbie L. Weiss who performed an Internal Medicine Consultative Evaluation for the Bureau of Disability Determination Services. R. 311. Dr. Weiss spent thirty-five minutes interviewing and examining Claimant. *Id*. Dr. Weiss described Claimant as "alert, cooperative and oriented" and noted that Claimant's ability to relate, concentrate, and maintain attention span was normal. R. 314. Dr. Weiss reported that Claimant came in with her pants unbuttoned due to abdominal swelling. R. 311. Based on her physical and mental evaluation of Claimant, Dr. Weiss concluded that the physical complications from the gunshot wound and PTSD were the Claimant's primary medical issues. R. 315. Dr. Weiss stated that Claimant "did not appear to be depressed and she had a normal mental status exam." *Id*. Dr. Weiss noted that Claimant experiences fever, nausea and vomiting due to the fluid accumulation, but there is no mention of Claimant's pain in Dr. Weiss's report. R. 311-15.

### 3. State Agency Physicians: Drs. Jhaveri, Altman and Bone

On March 3, 2008, Dr. Bharati Jhaveri, a non-treating physician, evaluated Claimant's medical records at the request of the SSA. R. 316-18. In his report, Dr. Jhaveri found that Claimant's only impairment was the gunshot wound. R. 316. He did not report any mental impairments or discuss Claimant's pain or other symptoms. *Id*. Dr. Jhaveri concluded that the claim should be denied because Claimant's impairment is non-severe. *Id*.

Dr. Erika Altman completed a psychiatric review technique of Claimant's medical records on March 19, 2008. R. 319. She classifies Claimant's anxiety-related disorders as non-severe. *Id*. In assessing Claimant's functional limitations, Dr. Altman determined that Claimant's mental conditions moderately restrict her activities of daily living and ability to maintain concentration, persistence, and pace, and mildly limit Claimant's social functioning. R. 329. Dr. Altman found that Claimant experienced no episodes of decompensation. *Id*. Based on this analysis, Dr. Altman concluded that Claimant was only limited by her physical impairments. R. 331.

On June 17, 2008, Dr. Ernst Bone re-evaluated Claimant's medical records on behalf of the SSA. R. 408-410. Dr. Bone affirmed the conclusions of Dr. Jhaveri and Dr. Altman, finding that Claimant was not disabled. *Id*. He determined that Claimant's "alleged limitations are outweighed by the other evidence in this case," and "[t]he degree of limitation is excessive when compared to the objective medical evidence." R. 410. Dr. Bone also noted that Claimant receives no psychiatric treatment. *Id*.

### D. The ALJ's Decision – November 4, 2009

Following the November 5, 2008 hearing and review of the medical evidence, the ALJ found that Claimant was not disabled under the Social Security Act. R. 18. In making this

determination, the ALJ analyzed Claimant's application under the required five-step sequential analysis. R. 11-18. At step one, the ALJ found that Claimant did not engage in any substantial gainful activity since her August 8, 2006 onset date. R. 12. At step two, the ALJ determined that the physical ailments that resulted from Claimants gunshot wound were severe. *Id.* At step three, the ALJ concluded that Claimant's impairments did not meet or medically equal the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* At step four, the ALJ determined that Claimant has the RFC to perform work consistent with her past relevant work history of light work with no restrictions, such that she can lift twenty pounds occasionally and ten pounds frequently, and she can stoop, crouch, crawl, and kneel occasionally. R. 13-18. Because Claimant is capable of performing her past relevant work, the ALJ did not complete step five of the analysis. R. 11, 17.

In analyzing the severity of Claimant's impairments under step two, the ALJ evaluated whether her reported physical and mental conditions "significantly limit[]" her ability to engage in work activities. R. 10. The ALJ determined that the recurrent ascites and cysts caused by the gunshot would suffered by Claimant qualify as severe under 20 C.F.R. 404.1520(c) because the condition "more than minimally affect[s] the claimant's functional abilities in the workplace." R. 12. The ALJ found, however, that Claimant's medically determinable mental impairments of anxiety and PTSD did not qualify as severe under 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("paragraph B criteria"). R. 12-13.

In determining if mental impairments qualify as severe, the evaluating ALJ must determine the limitations these impairments impose on four functional areas: daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. R. 12. The ALJ found that Claimant had "no more than a mild limitation" in her daily living despite

Claimant's statements that her pain and side effects from her medication make some of these activities difficult. *Id*. The ALJ next determined that Claimant's mental impairments only imposed a mild limitation on her social functioning because Claimant "does spend time with others and gets along with friends, family, neighbors, and others." *Id*. In assessing the effect of Claimant's mental impairments on concentration, persistence, and pace, the ALJ evaluated Claimant's reports that she cannot pay attention for more than two hours when experiencing symptoms in conjunction with her statements that she does not have problems with her attention span and can handle changes to her routine well. *Id*. Based on this evidence, the ALJ determined that the limitation on the third functional category was no more than mild. *Id*. Finally, the ALJ found that, based on the evidence he reviewed, Claimant has not experienced any episodes of decompensation. *Id*. Because Claimant experienced only mild limitations in the first three functional categories and no instances of decompensation, the ALJ concluded that her mental impairments were non-severe. R. 12-13.[2]

At step four, the ALJ stated he reviewed "the entire record" to determine Claimant's RFC, concluding that she can perform light work without restrictions. R. 13-18. Specifically, she "can lift and carry twenty pounds occasionally and ten pounds frequently," and she can stoop, crouch, crawl, and kneel occasionally. R. 13. In evaluating the effect of Claimant's symptoms on her RFC, the ALJ followed a two-step process, first determining if the symptom can be linked to an underlying medically determinable impairment, and next assessing the "intensity, persistence, and limiting effects" of the symptom. R. 14. Claimant reported that her

---

[2] The ALJ noted that there are internal consistencies in the state agency medical consultant's report (R. 319-32), as the physician indicated moderate limitations in the first and third functional categories, but still found Claimant's mental impairments to be non-severe. R. 13. In the same report, the physician noted that Claimant had an "unremarkable" mental status and was only limited by her physical impairments. R. 13, 329-31. The ALJ chose to interpret the physician's report as concluding that there are only mild limitations in the functional categories. R. 13.

pain and the side effects of her medications significantly limit her ability to engage in normal activities. R. 14-15. She claimed that the medication causes her to fall asleep frequently, slur her speech, experience rapid movements, and have short-term memory loss. R. 14. Claimant further reported that when the ascites and cysts have to be drained, she requires two weeks to recover, during which time she is "unable to bend, dress, care for her hair, or prepare meals." R. 14.

The ALJ held, however, that "the objective findings of this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." *Id.* The ALJ determined Claimant's reports to be "not entirely credible," remarking that "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment record of restrictions placed on the claimant by a treating doctor." R. 16-17. The ALJ noted that, despite the repeated draining procedures, Claimant's doctors have never recommended surgery, treatment for Claimant's physical impairments is only required a few times each year, and her physical condition has remained static. R. 14-16. The ALJ further noted that physicians reported her symptoms as "mild" and noted that "she had an intact memory, and was able to concentrate and maintain her attention span." R. 15-16. Based on this evaluation of the record, the ALJ concluded that the medical evidence does not support the allegations of frequently disabling pain. R. 16.

The ALJ also observed that apart from taking anti-depressant medication, "there is no indication that the claimant received any additional mental health services," making Claimant's allegation of disabling limitations from anxiety and PTSD "less persuasive." R. 16. Although Claimant indicated interest in receiving emotional support, the record does not reflect any "counseling, therapy, or treatment from a psychiatric or psychological specialist." *Id.* The ALJ

therefore determined that "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision" and concluded that Claimant has the RFC to perform the "full range of light work" without any additional limitations. R. 13-17. Because this RFC is consistent with Claimant's past relevant work experience and she can perform this work without restrictions, the ALJ concluded that Claimant was not disabled. R. 17-18.

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of the Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALH applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3f 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

**B. Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected…to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a

severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 883, 841 (7th Cir. 2007).

### III. DISCUSSION

The Claimant raises the following issues in support of her motion: (1) whether the ALJ committed legal error by failing to adequately consider the effects of Claimant's pain and the side-effects of her pain medication and their impact on her daily activities in assessing Claimant's credibility and her RFC; and (2) whether the ALJ committed legal error in failing to factor in anxiety and PTSD when formulating Claimant's RFC.

**A. The ALJ Did Not Properly Evaluate Claimant's Credibility Regarding Her Pain and the Side Effects of Her Pain Medication and Failed to Build a Logical Bridge Between the Record Evidence and His Conclusion That Claimant Was "Not Entirely Credible"**

Claimant asserts that the ALJ did not adequately evaluate the effect of Claimant's pain and the side-effects of her pain medications and, as such, made an improper credibility determination in the course of his RFC assessment. She argues that the ALJ failed to discuss the ample evidence in the record regarding Claimant's pain and her drug-induced symptoms, and their impact on Claimant's ability to work. [Dkt.# 23]. Further, Claimant alleges that the ALJ improperly replaced Claimant's treating physician's medical judgment with his own in finding that Claimant was not credible because she did not have surgery and only received intermittent medical treatment. *Id.* (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

In evaluating the potentially disabling effects of symptoms like pain, the ALJ must perform a two-step analysis. First, he must determine if there is an underlying medical condition that could reasonably produce the symptom alleged, and then he must evaluate the "intensity, persistence, and functionally limiting effects of [Claimant's] symptoms" to determine their disabling effect. 20 C.F.R. §§ 404.1529 and 416.929. *See also* R. 14. The ALJ may not discount Claimant's allegations of pain solely because they are not substantiated by objective medical evidence. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). When "statements about the intensity, persistence, or functionally limiting effects of [Claimant's] pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." R. 14; 20 C.F.R. §§ 404.1529(c) and 416.929(c).

In making a credibility determination, the ALJ must "carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). The ALJ may not simply make conclusory statements that the evidence has been considered or that Claimant is not credible. SSR 96-7p. The ALJ's credibility determinations must be supported by evidence and "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. A reviewing court must not make independent credibility assessments, but the ALJ's findings cannot be upheld if the he does not "build an accurate and logical bridge from the evidence to the conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

In this case, although the ALJ referenced the required two-step process for evaluating the limiting effects of Claimant's symptoms, he did not clearly state that there is an underlying

medical condition that reasonably could produce the symptoms alleged. R. 14-16. He did, however, discuss the "gunshot wound that causes recurrent ascites and cysts that require draining" (R. 12) and then reference Claimant's allegedly related disabling pain and medication side effects. It appears, therefore, that the ALJ determined that Claimant's gunshot wound reasonably could be expected to produce Claimant's alleged symptoms. *Id*.

The ALJ then found that the medical evidence fails to support Claimant's allegations of disabling pain and side effects from her pain medication. R. 15. The ALJ noted that Claimant was prescribed pain medication and that she alleged some disabling symptoms, including the inability to bend, get up and down, walk around, or focus, and that she gets sleepy within twenty minutes of taking her pain medication, but he concluded that Claimant's "subjective complaints of disabling symptoms and pain are not entirely credible." R. 14-16. He appears to have largely based this conclusion on medical records indicating that Claimant requires only intermittent, conservative treatment, that Claimant is not a surgical candidate, and that Claimant's condition has remained relatively static over a period of years. R. 16.

The ALJ's credibility determination is flawed for two reasons. First, the lack of frequent treatment or surgical intervention is not necessarily indicative of a lack of limiting symptoms. Second, the logical bridge between the evidence and the ALJ's finding that the Claimant's allegations of pain and disabling side effects "are not entirely credible" (R. 16) is missing. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (describing the frequently-used "not entirely credible" phrase as "meaningless boilerplate").

To the extent the ALJ concluded that Claimant's allegations of pain "are not entirely credible" because she is not a surgical candidate and only received intermittent and conservative treatment, that conclusion is not supported by the evidence. Claimant's physicians did not refuse

to operate on Claimant because her injuries were not significant; they did not recommend surgery because the risks inherent in surgery outweighed the limited and unlikely benefits. R. 462 ("Historically . . . was determined to be a poor candidate for surgical intervention due to the risk of risk of [sic] adhesions and secondary SBOs."); R. 468 ("Due to the complexity of her condition, she was advised not to have surgery.") Moreover, Claimant's medical condition requires that she be hospitalized only intermittently when her abdomen fills up to such an extent that it needs to be drained by an interventional radiologist or when she contracts an infection secondary to her primary condition. Claimant's testimony and the medical evidence is uncontradicted that, at least at these times, her pain and symptoms are severe. R. 311-312; R. 492 ("bouts of severe abdominal pain and fluid collections comes [sic] every 3 to 4 months.")

The ALJ "must not draw any inferences about an individual's…failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p. In this case, the reasons that Claimant is not a candidate for surgery and only receives intermittent treatment are clear in the medical evidence of record, and do not reflect negatively on the severity of her alleged disabling symptoms. Therefore, to the extent the ALJ drew a negative inference as to Claimant's credibility from Claimant's non-surgical, intermittent, and conservative medical treatment in this case, that was improper and not supported by the record evidence.

There also is ample evidence in the record to suggest that Claimant experiences significant side effects from her pain medication. Claimant was prescribed several pain medications by her treating physicians and was often given additional intravenous pain medication when admitted to the hospital. *See*, *e.g.*, R. 252-64, 376-85. Her treating physicians

18

noted the need for Claimant to establish a pain management regimen. R. 497, 503. Moreover, Claimant and her mother both stated that Claimant's pain and the side effects of her pain medications caused significant limiting effects on her daily activities. *See*, *e.g.*, R. 170-78, 195-200, 213-26. Specifically, both Claimant and her mother noted that pain and medication side effects such as dizziness, sedation, nausea, and vomiting caused Claimant difficulty walking, preparing meals, grooming herself, completing household chores, and socializing. R. 38-42, 110, 170-78, 195-200.

To be sure, there also is evidence in the record that Claimant's pain was not totally disabling all of the time. The medical records reflect that there were times when Claimant's pain was controlled both with and without medication. R. 269, 356, 508. The severity of Claimant's pain varied significantly from day to day. R. 45. Additionally, Claimant stated that she is able to concentrate for two to four hours (depending on if she is experiencing symptoms of depression), she can follow directions well, and she can manage her finances. R. 213-26. The ALJ, however, discussed none of this evidence in his decision so we cannot rely upon it here. We do not know whether the ALJ considered it at all in concluding that Claimant's complaints of disabling pain "are not entirely credible" or how, if at all, it factored into his analysis. At bottom, the ALJ's unhelpful "not entirely credible" terminology, and the sparseness of the analysis in his opinion overall concerning Claimant's credibility, prevents us from understanding precisely why the ALJ discounted Claimant's credibility and whether that finding has support in the record evidence.

Lastly, in trying to understand the ALJ's credibility analysis, we note that the ALJ expressly declined to credit fully the opinions of the non-treating State agency physicians that Claimant's pain caused only mild to moderate limitations in her daily functions. R. 17. Those consultants opined that Claimant's "alleged limitations are outweighed by the other evidence in

this case," and that "the degree of limitation [alleged by Claimant] is excessive when compared to the objective medical evidence."  R. 329, 410.  The ALJ stated that the State agency physicians' opinions "are not entirely consistent with the rest of the record." R. 17.  Although the ALJ undoubtedly intended this finding to benefit Claimant, it is confusing in the context of the ALJ's overall credibility analysis because it seems to credit Claimant's testimony concerning the degree of her limitations and impairments even as the ALJ found Claimant "not entirely credible."  R. 16.  Thus, the ALJ's decision to reject the opinions of the non-treating State agency physicians appears to undercut, at least without further explanation, the ALJ's conclusion that Claimant's subjective complaints of pain and pain-related symptoms "are not entirely credible."  *Id.*

In the end, we are left with the ALJ's conclusion that Claimant's reports of disabling pain and related symptoms and pain "are not entirely credible" because Claimant was not a surgical candidate and received only intermittent, conservative treatment for a condition that has remained static for several years.  R. 16.  As discussed above, on this record, that is an inadequate foundation upon which to base a credibility determination since Claimant only requires intermittent, conservative treatment for the fluid build-up in her abdomen as a result of her gunshot wound and her doctors did not recommend more aggressive treatment or surgery.  Accordingly, this case must be remanded to allow the ALJ to better explain his apparent adverse credibility determination and the evidence upon which it is based.   On remand, the ALJ also should further illuminate the evidence in the record that caused him to reject the State agency physicians' opinions that Claimant's impairments were not severe and explain how that evidence is consistent with the ALJ's statement that Claimant's complaints of disabling symptoms and pain "are not entirely credible."  (R. 16, 17).

**B.  The ALJ's Written Decision Does Not Show That He Properly Considered Evidence of Claimant's PTSD and Anxiety In Formulating Claimant's RFC**

In determining a claimant's RFC under steps four and five, the ALJ must consider the effects that impairments determined to be non-severe have on the claimant's ability to work.  20 C.F.R. §§ 404.1523, 404.1545, and 404.945.  *See also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("[T]he ALJ needed to consider the *aggregate* effect of this entire constellation of ailments-including those impairments that in isolation are not severe.").  The ALJ is required to consider impairments that Claimant says she has and those supported by the medical evidence.  20 C.F.R. § 404.1512(a).  However, Claimant bears the burden of demonstrating that her impairments affect her ability to work.  20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Scheck v. Barnhart*, 357 F.3d 679, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.").  If the ALJ does not adequately consider all impairments in the record, including those determined to be non-severe, the decision of the ALJ must be reversed.  *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski*, 322 F.3d at 918).

Claimant argues that the ALJ failed to factor into her RFC assessment the limiting effects of her non-severe mental impairments, in particular her PTSD and anxiety.   Claimant maintains that she met her burden of showing the existence of these impairments, since the ALJ acknowledged their existence although he found that they constituted only mild limitations in the areas of activities of daily living and in concentration, persistence and pace.  R.12-13.  Claimant argues that the applicable social security rulings require the ALJ to consider a claimant's non-severe limitations in formulating her RFC and there is no evidence in the ALJ's opinion that he

did that here.  In response, the Commissioner says the ALJ did consider these impairments in assessing Claimant's RFC.  He points to language in the ALJ's decision in which the ALJ mentions that Claimant has a history of PTSD and anxiety (R.12, 14, 16) but nothing to indicate that the ALJ actually considered Claimant's PTSD or anxiety in formulating or reaching a determination regarding Claimant's RFC.

It appears to us that Claimant has the better part of this argument.  At the very least, the ALJ's mere mention that Claimant suffers from PTSD and anxiety in the section of his decision discussing Claimant's RFC does not persuade us that the ALJ actually considered Claimant's PTSD or anxiety in arriving at Claimant's RFC or how those impairments factored into the ALJ's analysis.  The Commissioner's argument seems to be that the ALJ mentioned that Claimant suffers from PTSD and anxiety and that is a sufficient indication that the ALJ considered those conditions in assessing Claimant's RFC.  But there is no evidence in the written decision to indicate that the ALJ actually did so here.  There is no discussion of whether or how Claimant's PTSD or anxiety factored into the ALJ's RFC determination.  The ALJ's decision is extremely sparse in this regard.  Moreover, the ALJ's ambiguous finding that "[C]laimant's subjective complaints of disabling symptoms and pain are not entirely credible" (R.16) throws more doubt into this area.  Accordingly, because we have decided to remand this case so the ALJ can better explain his credibility finding for the reasons discussed above, the ALJ also should revisit the issue of Claimant's PTSD and anxiety upon remand.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Claimant Charmaine E. Agnew's motion for summary judgment [Dkt.#22], denies the Commissioner's cross-motion for summary

judgment [Dkt.#27], and remands the case for further proceedings consistent with this opinion.

This is a final and appealable order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 2, 2013